IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:21-CR-00226-M |
| RAYSHUN JACKSON | |

**SUPERSEDING INFORMATION**

The United States Attorney Charges:

**Count One**
Conspiracy to Commit Money Laundering
[Violation of 18 U.S.C. § 371]

1. **Rayshun Jackson** was a criminal defense attorney who had a practice located at 1700 Pacific Avenue in Dallas, Texas.

2. Person A was the leader of an organization that was responsible for large-scale distribution of illegally-diverted opioids in Dallas, Texas. From September 2019 through February 2021, Person A was being investigated by the DEA and made a series of illegal narcotics sales to DEA undercover agents. Person A was also a business associate and former client of **Rayshun Jackson**.

3. From in or around May 5, 2020 to in or around March 22, 2021, in the Dallas Division of the Northern District of Texas, the defendant, **Rayshun Jackson**, Person A, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree with each other, to conduct and attempt to

Superseding Information - Page 1 of 7

conduct, financial transactions affecting interstate or foreign commerce, involving property represented by a law enforcement officer to be the proceeds of a specified unlawful activity, to wit: sale and distribution of controlled substances, with the intent to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

4. It was a part and object of the conspiracy that **Rayshun Jackson** would utilize his law practice to launder drug proceeds for an individual who **Jackson** thought was a drug trafficker. It was also a part and object of the conspiracy that **Jackson** would accept cash from this same drug trafficker, legitimize ("clean") the money using **Jackson's** law firm and IOLTA accounts and return the money to the drug trafficker, via wire transfers, to the drug dealer's bank account. Jackson would perform this service for the drug trafficker for an agreed-upon percentage of the laundered funds.

## Overt Acts

5. In furtherance of the conspiracy and to effect the objects thereof, **Rayshun Jackson** and Person A committed, and caused to be committed, the following overt acts, among others, in the Dallas Division of the Northern District of Texas, and elsewhere:

6. While selling hydrocodone to a DEA undercover agent, who posed as a drug trafficker, on or about February 19, 2020, Person A agreed to introduce the DEA undercover agent to an associate that Person A claimed could lauder the undercover

agent's drug proceeds. At this time, Person A did not reveal his associate's identity.

7.   An additional conversation occurred between Person A and the undercover agent on or about May 5, 2020, where Person A again confirmed that he would introduce the undercover to Person A's associate so that the associate could lauder the undercover agent's drug proceeds.

8.   While selling hydrocodone to a DEA undercover agent on or about August 20, 2020, Person A again agreed to introduce the DEA undercover agent to the person that Person A claimed could lauder the undercover agent's drug proceeds. During this meeting, Person A revealed to the undercover agent that the associate he was referring to was **Rayshun Jackson**. Person A also assured the undercover agent that **Jackson** would do the following with regards to the drug proceeds that the undercover agent wanted laundered:

> He's gonna clean it.. He's gonna wash it… He's going to explain to you in detail… I can't… I don't know the ends and outs… He's the lawyer. I am going to take you to him and when you get done, you'll feel comfortable.

9.   On or about September 3, 2020, the DEA undercover, posing as a drug trafficker, was introduced to **Jackson** by Person A at a meeting in **Jackson's** office at 1700 Pacific Avenue in Dallas, Texas. After Person A vouched for the undercover agent's trustworthiness, a discussion between **Jackson** and the undercover agent began where **Jackson** explained how he could clean and make legitimate the undercover agent's "Dope money." **Jackson** counseled the undercover agent on differing ways to clean the undercover's drug proceeds, including the use of shell corporations and the setting up of

Superseding Information - Page 3 of 7

non-traceable cash business. The two negotiated **Jackson's** laundering fees and **Jackson** agreed he would be capable of laundering up to $500,000.00 a month. It was also agreed that if the undercover's organization decided to utilize **Jackson's** services, a test run of $100,000.00 would be conducted so that both sides could gain trust. After the test run was successful, the amount would be increased.

10. On or about September 12, 2020, the undercover agent called **Jackson** and confirmed with him that the undercover agent's drug trafficking organization had decided to utilize **Jackson's** money laundering services.

11. On or about September 24, 2020, the undercover agent called **Jackson** and arranged to meet with him later that day, at his law firm, to deliver $100,000.00 in cash. The agreement was that **Jackson** would take 5% of this cash up front as his fee ($5,000.00) and lauder the remaining $95,000.00 back to the undercover, who would receive the money in an undercover bank account that's number the undercover provided **Jackson**. Later that day, the undercover handed $100,000.00 cash to **Jackson** in his office at 1700 Pacific Avenue in Dallas, Texas.

12. On October 19, 2020, **Jackson** made an electronic transfer in the amount of $35,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to the DEA undercover bank account.

13. On October 22, 2020, **Jackson** made an electronic transfer in the amount of $35,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to the DEA

undercover bank account.

14. On October 23, 2020, **Jackson** made an electronic transfer in the amount of $25,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

15. On or about November 23, 2020, the undercover delivered $300,000.00 cash to **Jackson** in his office at 1700 Pacific Avenue in Dallas, Texas. The agreement for this transaction was that **Jackson** would take 5% of this cash up front as his fee ($15,000.00) and lauder the remaining $285,000.00 back to the undercover, who would receive the money in the same undercover bank account as before.

16. On December 7, 2020, **Jackson** made an electronic transfer in the amount of $40,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

17. On December 16, 2020, **Jackson** made an electronic transfer in the amount of $40,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

18. On December 22, 2020, **Jackson** made an electronic transfer in the amount of $45,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

19. On December 31, 2020, **Jackson** made an electronic transfer in the amount of $35,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA

undercover bank account.

20. On January 14, 2021, **Jackson** made an electronic transfer in the amount of $35,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

21. On January 26, 2021, **Jackson** made an electronic transfer in the amount of $40,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

22. On March 4, 2021, **Jackson** made an electronic transfer in the amount of $30,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

23. On March 12, 2021, **Jackson** made an electronic transfer in the amount of $5,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

24. On March 15, 2021, **Jackson** made an electronic transfer in the amount of $5,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

25. On March 18, 2021, **Jackson** made an electronic transfer in the amount of $5,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

26. On March 22, 2021, **Jackson** made an electronic transfer in the amount of

$5,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 1956(a)(3)(B)).

**FORFEITURE NOTICE**
[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense violating 18 U.S.C. § 371, the defendant shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the conspiracy. The property to be forfeited includes, but is not limited to:

- $7,705 in funds seized from Wells Fargo account ending 2379.

The property to be forfeited may take the form of a forfeiture money judgment.

The government may seek forfeiture of substitute property from the defendant, pursuant to 21 U.S.C. § 853(p).


PRERAK SHAH
ACTING UNITED STATES ATTORNEY

_/s/ C.L. Coker_
COURTNEY L. COKER
Assistant United States Attorney
Texas State Bar No. 24062335
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone: 214-659-8751
E-Mail: Courtney.L.Coker@usdoj.gov

_/s/ Juanita Fielden_
JUANITA FIELDEN
Assistant United States Attorney
Texas State Bar No. 06965600
341 Pine Street, Suite 2101
Abilene, Texas 79601
Telephone: 325-672-8160
E-Mail: Juanita.Fielden@usdoj.gov