ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2021 SEP 20  AM 11: 23

DEPUTY CLERK_____

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

UNITED STATES OF AMERICA

v.

RAYSHUN JACKSON

Case No.   3:21-CR-00226-M

## FACTUAL RESUME

In support of Rayshun Jackson's plea of guilty to the offense in Count One of the Superseding Information, Jackson, the defendant, Brandon N. McCarthy, Barrett R. Howell and Scottie Allen, the defendant's attorneys, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Information charging a violation of 18 U.S.C. § 371, that is, conspiracy to commit money laundering in 18 U.S.C. § 1956(a)(3)(B), the government must prove each of the following elements beyond a reasonable doubt:[1]

*First*:      That the defendant and at least one other person made an agreement to commit the crime of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B), as charged in the Superseding Information;

*Second*:   That the defendant knew the unlawful purpose of the agreement; and

*Third*:      That the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose.

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2015).

**Factual Resume—Page 1**

The essential elements of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B), in the context of a conspiracy in violation of 18 U.S.C. § 371, are:[2]

*First*:     That the defendant knowingly conducted, or attempted to conduct a financial transaction;

*Second*:     That the financial transaction involved property represented to be the proceeds of a specified unlawful activity, namely proceeds of the sale and distribution of controlled substances; and

*Third*:     That the defendant intended to conceal or disguise the nature, location, source, ownership or the control of property believed to the proceeds of a specified unlawful activity.

## STIPULATED FACTS

1.     The defendant admits and agrees that the facts in the following paragraphs are true and correct.

2.     From in or around May 5, 2020 to in or around March 22, 2021, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant, Rayshun Jackson, Person A, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree with each other, to conduct and attempt to conduct, financial transactions affecting interstate or foreign commerce, involving property represented by a law enforcement officer to be the proceeds of a specified unlawful activity, to wit: sale and distribution of controlled substances, with the intent to conceal and disguise the nature, location, source, ownership and control of property

---

[2] Fifth Circuit Pattern Jury Instruction 2.76B (5th Cir. 2015).

**Factual Resume—Page 2**

believed to be the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

3.      Rayshun Jackson, was a criminal defense attorney who had a practice located at 1700 Pacific Avenue in Dallas, Texas.  Person A, the leader of an organization that distributed illegally diverted opioids in Dallas, Texas, was also a business associate and former client of Jackson.

4.      On September 3, 2020, Person A introduced a DEA undercover agent, who posed as a drug trafficker, to Jackson in his law office at 1700 Pacific Avenue in Dallas, Texas.  In the months prior to this meeting, Person A sold illegal narcotics to this DEA undercover agent on numerous occasions and sought to introduce the undercover agent to Jackson so that Jackson could help her launder her organization's illegal drug proceeds.  Person A vouched for Jackson's trustworthiness to the undercover agent and vouched for the undercover agent's trustworthiness to Jackson.

5.      After Person A made the introductions, a discussion between Jackson and the undercover began where Jackson explained how he could clean and make legitimate the undercover's, "Dope money."  It was a part and object of the conspiracy that Jackson would utilize his law practice to launder drug proceeds for the undercover agent who Jackson thought was a drug trafficker.  It was also a part and object of the conspiracy that Jackson would accept cash from this same drug trafficker, legitimize ("clean") the money using Jackson's law firm and IOLTA accounts and return the money to the drug trafficker, via wire transfers, to the drug dealer's bank account.  Jackson would perform this service for the drug trafficker for an agreed upon percentage of the laundered funds.

6.      During this initial meeting, Jackson counseled the undercover agent on differing ways to clean the undercover agent's drug proceeds including the use of shell corporations and the setting up of non-traceable cash business.  The two negotiated Jackson's laundering fees and Jackson agreed he would be capable of laundering up to $500,000.00 a month.  It was also agreed that if the undercover's organization decided to utilize Jackson's services, a test run of $100,000.00 would be conducted so that both sides could gain trust.  After the test run was successful, the amount would be increased. On September 12, 2020, the undercover agent called Jackson and confirmed with him that the undercover's drug trafficking organization had decided to utilize Jackson's money laundering services.

7.      Jackson, at all relevant times, knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

8.      On September 24, 2020, the undercover agent called Jackson and arranged to meet with him later that day, at his law firm, to deliver $100,000.00 in cash.  The agreement was that Jackson would take 5% of this cash up front as his fee ($5,000.00) and lauder the remaining amount of $95,000.00 back to the undercover, who would receive the money in an undercover bank account that's number the undercover provided Jackson.  Later that day, the undercover handed $100,000.00 cash to Jackson in his office at 1700 Pacific Avenue in Dallas, Texas.  Jackson, at all relevant times, knew the money he received from the undercover agent had been represented by her to be the proceeds of the sale and distribution of controlled substances.

9.      After depositing the $95,000.00 cash into his law firm and/or IOLTA accounts in various amounts on various days, he eventually returned all the money to the undercover agent's bank accounts via wire transfers.

- On October 19, 2020, Jackson made an electronic transfer in the amount of $35,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to the DEA undercover bank account.

- On October 22, 2020, Jackson made another electronic transfer in the amount of $35,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to the DEA undercover bank account.

- On October 23, 2020, Jackson made another electronic transfer in the amount of $25,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

Jackson conducted the above transactions in such a way as to conceal and disguise the nature, location, source, ownership and control of such money.

10.     On November 23, 2020, the undercover delivered $300,000.00 cash to Jackson in his office in Dallas.  The agreement for this transaction was that Jackson would take 5% of this cash up front as his fee ($15,000.00) and lauder the remaining amount $285,000.00 back to the undercover, who would receive the money in the same undercover bank account as before.  Jackson again, at all relevant times, knew the money he received from the undercover agent had been represented by her to be the proceeds of the sale and distribution of controlled substances.

11.     After depositing the $285,000.00 cash into his law firm and/or IOLTA accounts in various amounts on various days, he eventually returned all the money to the undercover agent's bank accounts via wire transfers.

- On December 7, 2020, Jackson made an electronic transfer in the amount of $40,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to the DEA undercover bank account.

- On December 16, 2020, Jackson made another electronic transfer in the amount of $40,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to the DEA undercover bank account.

- On December 22, 2020, Jackson made an electronic transfer in the amount of $45,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

- On December 31, 2020, Jackson made an electronic transfer in the amount of $35,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

- On January 14, 2021, Jackson made an electronic transfer in the amount of $35,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

- On January 26, 2021, Jackson made an electronic transfer in the amount of $40,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

- On March 4, 2021, Jackson made an electronic transfer in the amount of $30,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

- On March 12, 2021, Jackson made an electronic transfer in the amount of $5,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

- On March 15, 2021, Jackson made an electronic transfer in the amount of $5,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

- On March 18, 2021, Jackson made an electronic transfer in the amount of $5,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

- On March 22, 2021, Jackson made an electronic transfer in the amount of $5,000.00 from the Wells Fargo Bank account of "The Jackson Law Firm" to a DEA undercover bank account.

Jackson conducted the above transactions in such a way as to conceal and disguise the nature, location, source, ownership and control of such money.

12.     The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Superseding Information.

AGREED TO AND STIPULATED on this 17th day of September, 2021.

RAYSHUN JACKSON
Defendant


BRANDON N. McCARTHY
Attorney for Defendant


BARRETT R. HOWELL
Attorney for Defendant


SCOTTIE ALLEN
Attorney for Defendant

PRERAK SHAH
ACTING UNITED STATES ATTORNEY


COURTNEY L. COKER
Assistant United States Attorney
Texas Bar No. 24062335
1100 Commerce Street, Suite 300
Dallas, Texas 75242-1699
Tel: (214) 659-8751
Email: Courtney.L.Coker@usdoj.gov

Factual Resume—Page 7